May it please the Court. Randall Wanger for Appellant Steve Armbruster. I'd like to reserve three minutes for rebuttal. Why aren't you arguing a constitutional right to insubordination? Isn't that the end result of your position? No, it would only be an insubordination if if Steve and Armbruster was actually required to carry out the order. But we've we've already made a determination. That kind of puts a rabbit in a hat. What do you mean by actually required? Well, we've already made that determination. Well, at the at the end of the day, we would presume that any order given is constitutional. But we do already require police officers on the scene to to make a determination as to constitutionality, because they can be held civilly and criminally liable if they carry out an order that is, in fact, non-constitutional. So it's not quite that simple because of qualified immunity. The issue there is not absolutely an objective test about whether or not the order is unconstitutional. The officer can't just stand back and refrain from carrying out an order because he or she thinks, you know, there's problems with that order under the Dormant Commerce Clause. I don't think I'm going to I don't think I'm going to obey that order. Well, certainly certainly we don't want officers making decisions willy nilly. But if I can draw your attention to the context of the military, even in the military, officers are allowed to refuse orders if those orders are illegal. And there's an objective. But it's true that they don't typically then ask for immunity from the consequences. If the officer proves wrong, he's court-martialed. Oh, that's exactly correct. And we're not asking for anything more here. For an injunction for sort of a permanent cloak of immunity? Well, no, we certainly don't want. We're not asking for a police officer to be protected when he gets it wrong. But what we are asking is, is just the same as in the military context, if he's right and the order was unconstitutional, he should be free to refuse that order. In fact, he's mandated to. But how is that determination made? You used an interesting word at the outset. You used the word presume. In fact, we, as a reviewing court, presume acts of a legislative body, presume acts of Congress to be constitutional and place the burden upon those attacking the enactment to demonstrate its unconstitutionality. So should there be some presumption that obtains here, for lack of a better term, that an order of a superior officer in a paramilitary organization is constitutional, such that the burden then falls on the protestant, on the officer who wishes to defy the order? And if so, what kind of process and over what period of time is such a determination going to be made? Well, I would agree that there should be a presumption, just as in the military arena, you assume that the orders are constitutional and you disobey them at your peril if you're wrong. I think the protection that we have in place here is that we're asking for a court to review the constitutionality. So at the end of the day, Corporal Armbruster would need to prove that the order, in fact, was objectively unconstitutional. So it's not something that he would be doing willy nilly and he faces the risk of discipline if he's actually wrong. But- Clarify something for me, though. Didn't he have recourse to union grievance procedures if he really thought that he was being punished for a constitutional position that was correct? Isn't and wasn't there something in the record about his, in fact, having grieved the discipline? He did grieve the disciplinary process. There was a settlement that was made without his participation. But both of those issues are outside of the record and brought in by Appelli. At this point, on the motion to dismiss, what we have is discipline, loss of pay, loss of opportunities within the department because he refused an order which he had an obligation to refuse. So it should not be a new concept to us that we expect persons to refuse orders if those orders are, in fact, unconstitutional. And to just draw the analogy to Birmingham, Alabama, we certainly would say that the officers there should have had the right to refuse orders to turn fire hoses or sick dogs on peaceful protesters. Building, though, the examples at the extremes doesn't really help. We all know that if we're at Kent State, the order is to shoot to kill student protesters, that that is an unlawful order. But the extremes don't really help us. Here, you have a much more subtle situation, let's assume from a police chief's point of view. I have exactly the effectual circumstance presented here. I assume Armbruster thought in some ways that I don't disagree with the Repent America message that may be part of my decision-making process. But what if I had another officer who feels just as strongly that this is hate speech, and therefore, these people should be pushed off the campus? Now, I have two officers. One is taking one constitutional position, the other taking another. Do I, as the chief, now, before anything, is this something really that has to be resolved on the battlefield, or shouldn't the recourse be after the fact? Well, I think some of it is on the battlefield, and some of it's after the fact. I mean, what we have going on here is months and months afterwards, we still had the appellees saying, you were wrong. You should not have, you should have followed orders. We're going to discipline you. The disciplinary process was after they had a chance to deliberate and see, well, yes, in fact, the officers, the protesters were peaceful, and the order to remove was based on the content of speech. And the arrest was contemplated under disorderly conduct, and the elements of disorderly conduct weren't met, but they were arrested anyway. And then disciplining the officer for not making the arrest. Those are all things that aren't in the heat of the moment, like a police chase, but the discipline occurred during a period of time where there was the opportunity to sit back and say, are there constitutional rights at stake or not? And. You're not really focusing us on ultimate relief for having had to obey a distasteful and arguably unconstitutional order. You're asking for us to say that the officer on the scene has the right to say no, Chief. I have made a, I consulted my constitutional text, and your order is unconstitutional, or I am not going to obey it. Well, in fact, we demand that of police officers already. That's why we hold them, we hold them criminally liable or civilly liable if they get it wrong. And the fact that they had. What circumstances, though, make it sound like there's a general state of affairs where an officer can independently make a determination about the constitutionality of an order, and if the officer is right, then there's no repercussion? Those are very specific kinds of circumstances, aren't they? Well, that is the sort of thing that comes up in the run of the mill, civil rights case, where a police officer who is obeying an order that happens to be an unconstitutional order doesn't necessarily have the protection of I'm just following orders. We have case law both within the military context and outside of the military context that says you can't hide behind an order. If an order is unconstitutional, you just can't follow it. We've already made that determination as a society that certain orders are not to be followed if those orders are, in fact, unconstitutional. So we're not asking for anything new. We're not asking for police officers to be able to willy-nilly do their own thing. We're just suggesting just as they are required to make an independent judgment already that they have the right to do what duty requires them to do, which is to uphold the constitution. If there is a conflict between the mandate of the constitution. To uphold their individualized view of what the constitution requires in that circumstance. Well, ultimately, no, because there should be no recourse for the officer in the end if he got it wrong. If he got it wrong, he should be subject to insubordination. But why? If he has a good faith belief that he's doing something the constitution compels him to do and he's taking an obligation, taking an oath to uphold the law as he or she interprets it, why shouldn't there be some kind of immunity for the officer who gets it wrong under your scenario? Well, I suggest that to you as really a check and a balance within the system. To just take what we've already seen works within the military context, which is you objectively see whether the order was legal or constitutional or illegal or unconstitutional. You go forth at your own peril. And I think that's part of the protections in place here to make sure that we're not creating a situation where we have insubordination. But can we really take this case out of the context of where it occurs, which is in a police environment? I know many police officers who think that all gun laws are unconstitutional. Do they have the right to say, therefore, I'm not going to enforce gun laws? Well, at the end of the day, what we're looking at is a court of law determining whether the underlying order that he was asked to carry out was unconstitutional. So whether subjectively a police officer thinks it's constitutional or unconstitutional doesn't win it for him at the end of the day. It needs to objectively be an unconstitutional order. What's the difference between an order from an officer of the state and a statute as would be involved in the hypothetical that Judge Stearns just posed to you? Well, I think- Should we analyze differently an officer's refusal to adhere to an order of a superior officer than we would analyze that same officer's determination that he is not going to enforce a particular law because he considers it unconstitutional? Well, the United States Supreme Court, in talking about legislative acts, has stated that there is a presumption of constitutionality, but only to the extent that a reasonable officer would be looking at it and wouldn't inherently see the flaws. As far as executive action, the standard that we look at there is whether there's a shocking of the conscience in terms of being asked to carry out something that has no legitimate governmental interest. So in this case, would this shock the conscience that there was an order merely to move people who were engaging in a nonviolent protest? The shocking the conscience standard, there's three levels that you look at in order to see if they're shocking the conscience. Deliberate indifference would be the appropriate level. I'm asking you in this case, would it shock the conscience? Yes, yes, because over time, the police chief should have known better. It's a fact situation that we're assuming on a motion to dismiss. The facts are as pled. And as pled, we had peaceful demonstrators who were being removed on the basis of content without the elements of disorderly conduct being met. And we do understand your position. The light is on. Thank you very much. I'm restrained, so I can't be as liberal as I would like to be with both sides and giving you just kind of free reign with the time. Thank you very much. Thank you. Ms. Tesoro? May it please the Court. I'm Claudia Tesoro. I'm from the Attorney General's office, and I represent the appellees in this case. The legal issue before the Court is whether the district court properly dismissed count two of Mr. Armbruster's complaint, which, as you know, was based on the 14th amendment and is a substantive due process claim. If Mr. Armbruster had any possible constitutional right at stake under this scenario to raise questions about the order he was given to disagree with his chief to follow his conscience or whatever, we submit that it was a First Amendment right, if anything, which he raised and litigated. And he is not legally permitted to raise, in addition, a separate substantive due process claim based on the identical facts. As I understand it, he is, and that's what counsel just told me, basing his argument on substantive due process. In that context, you could conceive of a shocking the conscience circumstance. Kent State might shock your conscience if an order, in fact, was given to shoot to kill. Would it not? It's not that we'd never say that the 14th Amendment wouldn't provide a constitutional basis. Right. Kent State, of course, had a whole different set of facts. And I think I have recognized in our brief, and I recognize now, that if there are outer limits here where there is a potential substantive due process violation, this is not such a case. If the chief had ordered, if they don't obey the order to shoot them. I didn't hear the last part of what you said. If it's said, if they will not leave the campus open fire, that would shock your conscience. Right. I think that probably would be shocking to the conscience. Probably? You're not sure about that? I'm not sure. I'm still not sure that we're dealing with a right on the part of the employee that has the implications for employment across the board. But I can't disagree that shooting somebody who's making a protest would not be shocking to the conscience. So is ordering a subordinate to non-violently assist or move protesters, as occurred in this case, be conscience-shocking? I don't think that the order was conscience-shocking. But what we have to look at in employing the shocking to the conscience standard is whether assuming that the plaintiff had a fundamental right at stake was the action that was taken vis-a-vis the plaintiff shocking to the conscience. And frankly... Well, the action taken to the plaintiff was to give him an order to do a particular thing, that particular thing being just what I described, wasn't it? Well, I don't think that the lawsuit is based simply on the premise that I am suing because I was ordered to do something that I believed was unconstitutional. It has to be judged in terms of all... Judged otherwise. He is suing over a personnel-related decision. Yes, that's the damage, yes. That's not only the damage that he claims to have suffered, but that's the context in which the events occurred. And I think that's quite important. All right. In fact, I think one can legitimately ask the question at the outset, analytically, of whether under current Supreme Court and Third Circuit precedents, there really is any such thing as a shock... Excuse me, a substantive due process claim that can be successfully litigated in the employment context. I guess the Kent State example might answer that question, but that has not yet come before the court and hasn't yet been decided. The cases that we do have at our disposal, such as the Supreme Court's Collins case and this Court's Nicholas case, both seem to signal quite strongly that substantive due process is not the legal route to go if you're upset as an employee about something that happened to you in your work situation. Now, we know, of course, that Mr. Armbruster thinks that his situation is a little different because he is attempting to bring forth a fundamental right that is unenumerated, but still, according to him, implied in the Constitution. But the Supreme Court and this Court are both very cautious about recognizing rights. And that right is, as he characterizes it, a right to refuse to adhere to a particular order, isn't it? He's framed the right? He's used different phrases in different places, but basically, yes. Well, that's the way he sets it forth in his statement of issues presented. Right. In the original complaint, count two, he stated a little bit more concisely. I think his statement of issues in his brief has two sort of prongs. The right to refuse an order and not be disciplined. And as he originally claimed it, it was a right to refuse an order that would infringe upon someone else's constitutional rights and not be disciplined for it. It's really the same thing. It's similar and probably if... He's not arguing for a flat-out right to refuse an order. No. He's saying that if he's put in a situation where he has to do something that he thinks his oath upholds the law and the Constitution precludes him from doing, then he ought to be able to refuse that order without incurring a penalty. Right. Your rights analysis is very interesting. I assume that all things considered, just assume that you're arguing the First Amendment, that you would say Garcetti. Well, I think that the district court already said Garcetti and that's that. But because of that, we get back to what I mentioned earlier that the being the more specific provision rule. That rule is what means that Garcetti covered this case. There isn't an alternative avenue for the plaintiff to pursue under substantive due process at all. And that aside, what is the right? The right has to come from the Constitution. Saying that there is a right, even to say that there's a right in the military, I think, doesn't tie the right, the claimed right, to the Constitution, which is, after all, the very first step that the court must go through. Let me understand that. That's because you're saying that the military rule, which I would characterize roughly as the Nuremberg rule, is a matter of military law, not Constitutional law. That's my understanding. Or at best. International law. Which we're forbidden to speak of. You are. In Massachusetts, they can't do that. In Philly, we can do it. Well, I mean, as I understand it, and I have to be straightforward. I have not researched this or ever had any experience with it. But the military scenario is governed, I think, by the Uniform Code of Military Justice, which lays out various rules and options about what a person on the battlefield is and isn't allowed to do, which is not what we have here. We don't have a statute. As a matter of fact, there's even a federal statute, I think, for federal employees. Part of the Civil Service Reform Act suggests that it can be a prohibited personnel practice or some such if somebody gives an order to somebody else that's contrary to law. But we don't have that either. So what we're looking at is, do we have anything under the Constitution itself that is explicit? Certainly not. Is it implicit? I don't think it's there either, because there are very few recognized implicit constitutional rights. And those that do exist don't seem to resemble what is being urged here at all. I am not saying, and I guess I was almost surprised to hear part of the appellant's warning. I'm not saying that every public employee always has to follow every single order that's ever given blindly with no recourse at all. And he seems to agree with that. What I am saying is that there is no avenue for the employee under Section 1983 in that situation, because there isn't a constitutional right to do what has been proposed. You can follow your conscience if the situation warrants. Your superior might relent, in which case there's no problem. If not, you take the consequences, as Mr. Wenger seemed to acknowledge. And then you sort out after the fact, not in a federal lawsuit, but after the fact in the employment setting, whether you were right or wrong, whether your superior was right or wrong by, for example, a grievance procedure. Mr. Wenger mentioned, incidentally, that there's nothing about that in the record here. And that's true, but I think it might be helpful for the Court to look at the decision in Homar v. Gilbert, either this Court's decision before the case went to the Supreme Court or the remand decision after the case came back. But that case arose on a different campus of the state system of higher education, and it clearly does indicate that the campus police are subject to a clubbed collective bargaining agreement. So the discipline that was imposed here was in accordance with whatever procedures are available under that collective bargaining agreement. You didn't cite that case, did you? I did not cite it, no. But I'd be happy to provide the sites for all the different decisions by letter if it would be helpful to the Court. Also during Appellant's argument, we touched on the executive versus legislative dichotomy that affects how you analyze a substantive due process case. And this case involving one incident with one plaintiff and a couple of defendants is clearly executive action by the government, which has to be assessed by the standard of conscience shockingness that's been discussed earlier. I'm not so sure that the standard in this particular case is deliberate indifference as Mr. Wenger suggested. I will agree with him that we're not talking about something as extreme as a car chase or, for that matter, a Kent State shooting. But this is, I would argue, probably better analyzed under the intermediate standard because of the circumstances under which the order and, in fact, the discipline process began. And that was it wasn't only the Repent America protesters peacefully delivering their message. The situation got a little more complicated and there were hundreds of people gathered and the context was not quite as deliberate and detached as the plaintiff might suggest. But I'd also say that no matter what standard you use here, at most what we have is an erroneous supervisory decision, whether you look at it as the supervisory decision issued on the campus at the moment in question or the supervisory decision to process or even a supervisory decision not to retract the discipline any sooner than it got settled through the union grievance. I certainly don't want to malign my own clients, but even if they were ignorant or wrong or if they overreacted or whatever, to make that kind of error does happen. And as the Supreme Court, I think, has made clear, federal courts don't sit to judge or reassess every single personnel action that happens under the guise of due process consideration. This case was, from our perspective, a disciplinary matter that arose in a state government organization. It was handled as it was handled. The individual affected had his avenue to deal with it, but he did not have a fundamental right at stake. And if he did, being the victim of an improper, allegedly improper, personnel action is not a constitutional matter. I see the light is yellow now, so unless the Court has further questions, I will rest on the brief and ask that the decision of the District Court be affirmed. Thank you. Thank you. Certainly, the right at stake here is not enumerated. But at the same time, there is a history, both in and outside of the military context, talking about the right to refuse orders. And that's what we look to on substantive due process claims. In addition to that, we look to whether it's necessary for ordered liberty to have such a right. And certainly, if police officers have a duty to uphold the Constitution, they take an oath to uphold the Constitution, they must have the corollary right to do so. But even if this Court- Does that corollary right then transform itself into a right to interpret the Constitution on the scene at the moment? Well, I think we're already asking police officers to interpret the Constitution every moment so that they're upholding the Constitution. But if I can interpret your concern, your concern would be police officers just sort of taking it into their own hands. And we have insubordination happening all the time because of subjective assessments. I think we've seen this work in the military context, where a person proceeds with their own peril. And if they get it wrong, they get it wrong and they can be disciplined. The point here isn't so much that you should have a right of conscience protected as if you really were right, you shouldn't be disciplined for that. And you shouldn't be made to suffer the consequences of discipline. And that's why this, too, is different than personnel decisions that we saw in Nicholas or Collins. This doesn't start with, I've got a right to employment or I've got a right to certain terms of employment. This fundamentally has to do with his right to refuse an order and the damages were what happened to him afterwards. But if I may, I'd like to point out, even apart from fundamental interests that are at stake here, even under rational basis, there is no legitimate governmental interest in disciplining somebody for an illegal order. Even the United States Supreme Court said that in Parisi. So what happened here is not something that passes even rational basis scrutiny. And then going back to the executive action analysis, deliberate indifference is the right or with juveniles or with the foster care decisions, where it wasn't a decision that was made on the spot, but it was a decision in which persons should have had an opportunity to deliberate, but they didn't. And what I'm asking here today is to rule for Corporal Armbruster to make sure that the purposes of the Constitution are upheld, not only for Corporal Armbruster, but for all the decisions that officers make. Thank you very much.